```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-31-14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAVID A. BROWN,

                       Plaintiff,                  13-cv-7544 (PKC)

          -against-                      MEMORANDUM
                                              AND ORDER

LOWER BRULE COMMUNITY
DEVELOPMENT ENTERPRISE, L.L.C.,
GAVIN CLARKSON, GREAT AMERICAN
INSURANCE GROUP, and CSSC
BROKERAGE, INC.,

                       Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff David A. Brown brings this action against defendants Lower Brule Community Development Enterprise, L.L.C. ("LBCDE"), Gavin Clarkson, Great American Insurance Group ("Great American"), and CSSC Brokerage, Inc. asserting claims of default on a promissory note, breach of contract, breach of the covenant of good faith and fair dealing, and securities fraud. The claims arise out of defendant Clarkson's alleged oral misrepresentation to Brown regarding a $257,000 limited recourse promissory note issued to Brown by LBCDE (the "Note") and LBCDE's subsequent default on the Note. Plaintiff's action against Great American was dismissed on June 16, 2014.

        Defendants LBCDE and Gavin Clarkson now move to dismiss all claims pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Docket #83) For the reasons explained below, defendants' motion to dismiss is granted.

BACKGROUND

The following facts are taken from the Second Amended Complaint (the "Complaint"). Defendant LBCDE is a limited liability company and a subsidiary of the Lower Brule Corporation ("LBC"). (Compl't ¶¶ 2, 6) The Lower Brule Sioux Tribe (the "Tribe") formed LBC pursuant to Section 17 of the Indian Reorganization Act in order to engage in business activities to improve the Tribe's members' social and economic circumstances. (Id. ¶¶ 4-6) In 2008, LBC acquired Westrock Group, Inc. ("Westrock Group") and Brown was appointed President of Westrock Group in or around January 2011. (Id. at ¶¶ 18-19) In June 2010, the Tribe procured a Loan Guaranty Agreement (the "DOI Guaranty") from the U.S. Department of the Interior pursuant to which the Department of the Interior agreed to guarantee payment to LBCDE for up to 90% of any loss sustained on an identified loan of $22,519,638.00 that LBCDE issued to its affiliate, LBC Western Holdings, LLC (the "LBCWH Note"). (Id. ¶¶ 21-22) The DOI Guaranty agreement provided that "The Lender [LBCDE] may sell the loan and the Loan Guaranty Certificate in accordance with . . . 25 CFR §§ 103.28 and 103.29." (Compl't ¶ 22)

In connection with the LBCWH Note and related transactions, LBCDE subsequently executed three classes of Existing Notes including 73 Class A Notes varying in principal amount from $7,000 to $3,000,000. (Id. ¶¶ 27-28) On March 11, 2011, Brown executed one such Class A Note with a principal amount of $257,000 in exchange for compensation owed to him by Westrock Group (the "Note"). (Id. ¶ 29) Brown's note entitled him to an interest-only payment on March 11, 2012, the first anniversary of the Note's execution; subsequently, the Note provided for annual payments of principal and interest until the loan reached maturity in 2030. (Id. ¶ 33) The Note defines the term "default" to be the

occurrence of any of a number of events, including the "failure of the Maker to pay any part of this Note, or any other obligation of the Maker to Payee under this Note as it becomes due." (Compl't Ex. A at 3.) LBCDE made partial payment of accrued interest in December 2011 (Compl't ¶ 42); however, the Complaint alleges that LBCDE defaulted on the Note when LBCDE did not pay Brown the remaining accrued interest due on March 11, 2012, the anniversary of the Note's execution. (Id.) Consequently, on April 11, 2012, Brown sent LBCDE a Demand to Accelerate Bond pursuant to the Note's acceleration clause which provides that "upon default under this Note, the Payee, at its option, may declare the entire unpaid principal balance of this Note, together with accrued but unpaid interest, to be immediately due and payable without notice or demand." (Compl't Ex. A at 4.) LBCDE rejected Brown's demand and has not made other payments to Brown as they became due on March 11, 2013 and March 11, 2014. (Compl't ¶¶ 43, 52)

Even if LBCDE's failure to pay Brown on the abovementioned dates constitutes a default, Brown has limited recourse under the Note (Compl't Ex. A.) The Note limits Brown's remedies upon default of the note to "funds, if any, collected by the Maker under the DOI Guaranty" attached to the LBCWH Note. (Compl't Ex. A at 4.) Alternatively, Brown can seek recovery from LBCDE's assets only if a Recourse Event, as defined by the Note, is triggered. (Id.) Brown alleges that two Recourse Events have occurred. (Compl't ¶¶ 48-50) Recourse Event (b) is triggered when "Maker fails to immediately pay or cause to be paid to Payee under the Note the proceeds that are received by Maker under the DOI Guaranty or the Financing Documents in such amounts as set forth herein" while Recourse Event (e) occurs when "Maker commits fraud or makes any material misrepresentation in connection with the Offering, this Note, the Financing Documents, or the DOI Guaranty." (Compl't Ex. A at 4.)

In April 2012, LBCDE sold a portion of the LBCWH Note, along with the DOI Guaranty, to Great American Life Insurance Company, eliminating LBCDE's ability to collect under the DOI Guaranty.  (Compl't ¶ 36)  The Complaint does not allege that LBCDE has ever collected funds from the Department of the Interior pursuant to the guaranty agreement for the LBCWH Note; thus, if LBCDE did not and can no longer receive proceeds under the DOI Guaranty, Brown's recourse under the Note would be dependent upon the occurrence of a Recourse Event.

Brown alleges that, prior to executing the Note with LBCDE in March 2011, Clarkson, then President and Chief Executive Officer of LBCDE, orally promised Brown that all Class A Note holders would be paid in full, including principal and interest, at the time the LBCWH Note was resold.  (Id. ¶ 31)  Brown claims that this oral promise induced him to execute the Note with LBCDE.  (Id.)  The Complaint also asserts that LBCDE did, in fact, use proceeds from the sale of the LBCWH Note to redeem $12,123,802 of outstanding principal of the Class A Notes; however, LBCDE did not redeem Brown's note as promised.  (Id. ¶¶ 36-37)  Brown claims that LBCDE used the sale proceeds to redeem an "overwhelming majority" of the Class A Notes while refusing to pay select Class A Note holders, including Brown.  (Id. ¶ 47)  Brown contends that, upon default of the Note and pursuant to the Note's acceleration clause, Brown is entitled to proceeds from the sale of the LBCWH Note to which the DOI Guaranty was attached.  Brown alleges that Recourse Event (b) occurred when LBCDE refused to pay Brown from the LBCWH Note sale proceeds.  Brown further alleges that defendants committed fraud, thus triggering Recourse Event (e), when Clarkson orally promised Brown that the Note would be paid upon the sale of the LBCWH Note and LBCDE failed to comply with that promise.

Brown seeks damages from LBCDE and Clarkson in the amount of $257,000 plus interest accrued from March 11, 2012, the day of default, and attorney's fees and costs.

RULE 12(b)(6) STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Id. Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).

"[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert denied, 503 U.S. 960 (1992)). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153) (2d Cir. 2002) (citations and internal quotation marks omitted)). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers, 282 F.3d

at 153. "[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)) (citation and internal quotation marks omitted).

DISCUSSION

I. Default on a Promissory Note and Breach of Contract Claims

Brown alleges essentially the same set of facts in support of his claim that LBCDE defaulted on the Note and his claim against LBCDE for breach of contract. The Court looks first to whether LBCDE has in fact defaulted on the Note and, if the Court finds a default, then considers Brown's available remedies under the terms of the Note.

a. Default on the Note

"To establish a *prima facie* case of default on a promissory note under New York law, [a plaintiff] must provide proof of the valid note and of defendant's failure, despite proper demand, to make payment." Export-Import Bank of U.S. v. Agricola Del Mar BCS, 536 F.Supp.2d 345, 349 (S.D.N.Y. 2008) (citing Gateway State Bank v. Shangri-La Private Club for Women, Inc., 493 N.Y.S.2d 226 (2d Dep't 1985)). A copy of the Note is attached to the Complaint as Exhibit A and Brown's assertion that the Note is valid and enforceable is not opposed by the defendants. (Compl't ¶ 62) Pursuant to the Note agreement, an accrued interest payment was due on March 11, 2012, the anniversary of the Note. (Compl't Ex. A at 1.) Although LBCDE made partial payment of the accrued interest to Brown on December 7, 2011, Brown alleges that defendants failed to make the remaining interest payment due on March 11, 2012. (Compl't ¶ 42) Brown also avers that LBCDE failed to make any payment on March 11, 2013 and March 11, 2014, as required by the terms of the Note. (Compl't ¶ 43) The Note

defines "default' as "the failure of the Maker to pay any part of this Note, or any other obligation of the Maker to Payee under this Note as it becomes due." (Compl't Ex. A. at 3) Thus, reading the Note and the Complaint in a light most favorable to the plaintiff, the Complaint plausibly alleges that LBCDE defaulted on the Note. Nevertheless, the Note is a limited recourse promissory note; thus, the viability of Brown's claims for relief rests on Brown's available remedies under the terms of the Note.

    b. The DOI Guaranty

    The terms of the Note state that "[e]xcept with respect to Recourse Events, Payee's recourse under this Note is limited to funds, if any, collected by the Maker under the DOI Guaranty." (Compl't Ex. A at 4.) The parties dispute the meaning of the term "collected by the Maker under the DOI Guaranty." Under New York law, where a written contract is unambiguous, it should be enforced according to its terms, and "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990). Whether a contract is ambiguous is a question of law and extrinsic evidence should not be considered to create an ambiguity where there would otherwise be none. Id. at 162-63. "The language of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" Seiden Associates, Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (quoting Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 459 (1957)). A court should not interpret a contract in a manner that would be "absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." In re Lipper Holdings, LLC, 766 N.Y.S.2d 561, 562 (1st Dep't 2003).

Brown argues that the term "collected by the Maker under the DOI Guaranty" includes any proceeds that LBCDE received from the sale of the LBCWH Note and the DOI Guaranty, therefore entitling Brown, upon LBCDE's default on the Note, to recover proceeds from the sale of LBCWH Note. (Pl. Mem. at 9-10). In attempting to persuade the Court of his position, Brown analyzes the term "proceeds" and, after citing to Black's Law Dictionary, argues that the term "proceeds" clearly encompasses the sale of the LBCWH Note and the funds LBCDE received from that sale. (Pl. Mem. at 11.) Even if the Court were to agree with Brown's interpretation of the word "proceeds," Brown fails to address the remainder of the term that reads "under the DOI Guaranty." Defendants argue that the plain, and only, meaning of the phrase "collected . . . under the DOI Guaranty" incorporates only those funds that LBCDE could have received directly from the Department of the Interior pursuant to the Guaranty agreement when LBCDE possessed the LBCWH Note. (Defs. Mem. at 10-11.) Because LBCDE sold the portion of the LBCWH Note that included the DOI Guaranty, defendants assert that LBCDE is no longer a beneficiary of the DOI Guaranty and thus has not and cannot collect funds under the DOI Guaranty. (Id.)

Brown's interpretation would be akin to construing the language "under the DOI Guaranty" to include the proceeds from the sale or transfer of the note that includes the DOI Guaranty, yet Brown offers no support for this assertion. To read the term "funds, if any, collected by the Maker under the DOI Guaranty" to include funds the Maker may receive from the sale of the note to which the DOI Guaranty is attached is a strained and unreasonable interpretation of the contract. Thus, the Court concludes that the term "funds, if any, collected by the Maker under the DOI Guaranty" is unambiguous and does not include funds LBCDE received from the sale of the LBCWH Note. Because LBCDE has not collected any funds from

the DOI under the DOI Guaranty and can no longer collect under the DOI Guaranty, Brown's available remedies under the Note are dependent upon the occurrence of a Recourse Event.

   c. Recourse Events

  The Complaint alleges the occurrence of two Recourse Events. The triggering of a Recourse Event, as defined by the terms of the Note, would permit Brown to recover damages directly against LBCDE regardless of whether LBCDE collects any funds under the DOI Guaranty.

  First, Brown asserts that Recourse Event (b) was triggered when "Maker fail[ed] to immediately pay or cause to be paid to Payee under the Note the proceeds that are received by Maker under the DOI Guaranty or the Financing Documents in such amounts as set forth herein." (Compl't Ex. A at 4.) In support of his claim, Brown again argues that "proceeds that are received by Maker *under the Guaranty*" includes proceeds LBCDE received when the LBCWH Note was sold. (Pl. Mem. at 11-12.) As explained above, LBCDE has not received proceeds "under the DOI Guaranty" and LBCDE can no longer receive proceeds under the DOI Guaranty. Thus, Brown's claim that Recourse Event (b) occurred when LBCDE did not pay Brown from the proceeds of the LBCWH Note fails for the reasons stated in Part I(b) above.

  Second, the Complaint alleges that defendants committed fraud in inducing Brown to execute the Note, thereby triggering Recourse Event (e): "Maker commits fraud or makes any material misrepresentation in connection with the Offering, this Note, the Financing Documents, or the DOI Guaranty." (Compl't Ex. A at 4.) Under New York law, the elements of common law fraud are "defendants knowing misrepresentation of a material fact, made with the intent to deceive, plaintiff's reasonable reliance, and damages." Salles v. Chase Manhattan Bank, 300 A.D.2d 226, 228-29 (1st Dep't 2002). To sufficiently state a claim of relief dependent

upon an allegation of fraud, the Complaint must plead the elements of common law fraud and satisfy the pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure.

        i.   Rule 9(b)

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Regarding any alleged mental state, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Id.  To plead a fraudulent misstatement, "the plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 108 (2d Cir. 2012) (citation and internal quotation marks omitted).  A plaintiff alleging fraud must also plead facts giving rise to a "strong inference of fraudulent intent."  Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995).  This may be accomplished "by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 634 (2d Cir. 1996).

The Complaint alleges that defendant Clarkson, prior to the execution of Brown's note, orally promised Brown that the note would be paid in full when LBCDE sold the LBCWH Note.  (Compl't ¶ 50)  Brown asserts that Clarkson's promise induced Brown to execute the Note.  (Id.)  Brown further contends that, after the sale of the LBCWH Note, LBCDE's payment of amounts due under the Class A Notes to a majority of the Class A Note holders, while deliberately excluding Brown, demonstrated LBCDE's obligation and intention to pay the Class A Note holders when the LBCWH note was sold.  (Id. ¶ 47)

The Complaint contains sufficient factual allegations to satisfy Rule 9(b)'s heightened pleadings standards for alleging a fraudulent misstatement. The Complaint specifies a purported fraudulent misstatement: Clarkson's oral promise to Brown that all Class A Note holders would be paid in full, in principal and interest, upon sale of the LBCWH note. (Compl't ¶¶ 31, 50) Furthermore, the Complaint identifies defendant Clarkson as the speaker and pleads that the statement was made "[j]ust prior to the time Brown executed his Note in March 2011." (Id. ¶ 31) Brown also contends that the misstatement was fraudulent because, after the LBCWH Note was sold, LBCDE paid, in full, a majority of the Class A Notes while failing to fulfill its promise to pay Brown. (Id. ¶ 50) While it is a close question, the Court accepts that the following pleaded facts together constitute "strong circumstantial evidence of conscious misbehavior or recklessness," S.Q.K.F.C., Inc., 84 F.3d at 634: 1) in order to induce Brown to execute the Note, Clarkson made a promise to Brown that all Class A Note holders would be paid in full when the LBCWH Note was sold (Compl't ¶ 31); 2) the LBCWH Note was, in fact, sold after the execution of Brown's note (Compl't ¶ 36); and 3) many Class A Note holders were paid in full by LBCDE after LBCDE sold the LBCWH Note that contained the DOI Guaranty (Compl't ¶¶ 44, 47).

    ii. Reasonable Reliance

The Complaint's satisfaction of Rule 9(b)'s pleading requirements regarding the misstatement, however, does not resolve the motion to dismiss. In an action for fraud in New York, a plaintiff must adequately plead reasonable reliance on the alleged misrepresentation. See Emergent Capital Inv. Mgmt., LLC. v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003). "In assessing the reasonableness of a plaintiff's alleged reliance, we consider the entire context of the transaction, including factors such as its complexity and magnitude, the

sophistication of the parties, and the content of any agreements between them." Id. Furthermore, the Second Circuit holds sophisticated parties to "a further duty to protect itself from misrepresentation" and has concluded that

> [W]here . . . a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation *or inserting appropriate language in the agreement for his protection*, he may truly be said to have willingly assumed the business risk that the facts may not be as represented.  Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.

Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1543 (2d Cir. 1997) (citation and internal quotation marks omitted).

Lazard Freres concerned alleged misrepresentations about the contents of a document that the buyer knew existed but was not permitted to review prior to transacting with the defendant.  The Second Circuit has since expanded the reasoning of Lazard Freres to apply to oral misrepresentations alleged to have fraudulently induced parties to enter into a contract.  See Century Pac., Inc. v. Hilton Hotels Corp., 354 F. App'x 496 (2d Cir. 2009), Allison v. Round Table Inv. Mgmt. Co., LP, 447 F. App'x 274 (2d Cir. 2012).  When a sophisticated party is confronted with a known risk to his benefit or remedies under a contract, his "'failure to insert [protective language] into the contract –by itself—renders reliance on the misrepresentation unreasonable as a matter of law.'"  Century Pac. 354 F. App'x at 499 (quoting Lazard Freres, 108 F.3d at 1543).

The Complaint expressly alleges that Brown had held senior level positions at the parent of two broker-dealers and as the head of institutional trading at affiliates of LBC prior to the execution of the Note.  (Compl't ¶¶ 18-19)  Specifically, it alleges that around January 2011,

Brown was appointed President of Westrock Group, a holding company for an institutional sales firm and two broker-dealers. (Id.) Prior to his appointment as President of Westrock Group, and beginning in November 2008, Brown served as head of institutional trading at Westrock Advisors, a subsidiary of Westrock Group. (Id. ¶ 19) In August 2010 Brown also became CEO of Monarch Financial, another subsidiary of Westrock Group. (Id.) Westrock Group, Westrock Advisors, and Monarch Financial are subsidiaries of LBC, of which LBCDE is also a subsidiary. (Id. at ¶¶ 6, 10, 18-19) Thus, plaintiff is a sophisticated party within the meaning of Lazard Freres. See Allison, 447 F. App'x at 276 (considering plaintiff to be a sophisticated party based on his MBA and "over twenty-five years of work experience in capital markets and investments, including senior level positions").

The Second Circuit has recently noted that the reasoning of Lazard Freres and related precedent applies in cases "only where the relevant plaintiff had notice that it has received false or incomplete information." Meisel v. Grunberg, 521 F. App'x 3, 7 (2d Cir. 2013). As will be explained, the Court concludes that the Lazard Freres line of cases applies here. Meisel involved defendants' purchase of plaintiff's interest in two apartment buildings and an alleged misrepresentation by one defendant as to the purchaser's intent to resell the buildings. 521 F. App'x. Although the plaintiff in Meisel could have theoretically conjectured that the purchaser intended to resell the building, and that information may have influenced the plaintiff to sell his interest at a higher price, no evidence existed showing that plaintiff was, in fact, on notice that defendant had misrepresented purchaser's intention to resell. Id. Thus, the plaintiff in Meisel had no reason, beyond pure speculation, to believe that he should insert protective language in the contract regarding defendant's statements.

Here, however, prior to the execution of the Note, Brown had actual knowledge of LBCDE's intention to sell the portion of the LBCWH Note to which the DOI Guaranty was attached. (Compl't ¶ 31) Brown alleges that Clarkson told him that he, Brown, was going to be paid when the LBCWH Note was resold. (Id. ¶ 50) Thus, the Complaint explicitly acknowledges that, prior to the execution of the Note, Brown knew that the LBCWH Note, along with the DOI Guaranty, was going to be sold. (Id. ¶¶ 31, 50) The Complaint does not allege, however, any attempt by Brown to insert protective language into the Note agreement to guarantee payment from proceeds of the sale of the LBCWH Note, nor does the Complaint assert any explanation why it was reasonable for Brown to rely on Clarkson's oral promise. Rather, as alleged, Clarkson's statement, without any written or supplemental assurances, induced Brown to sign the Note agreement. Furthermore, the Note agreement itself notified Brown of the potential misuse or nonuse of the DOI Guaranty: "Payee is fully at risk in the event the Maker fails to properly utilize, enforce, or otherwise act under the DOI Guaranty." (Compl't Ex. A at 3) Thus, this case is within the Lazard Freres line of cases where plaintiff becomes aware of a risk to the contract, yet relies on defendant's oral representations and fails to insert language into the contract to protect himself. See Century Pac., 354 F. App'x at 498 ("plaintiff was concerned about the possibility of a sale and, as in Lazard Freres, capable of protecting itself through the terms of the contract"). Thus, "there are simply no facts in [plaintiff's] complaint from which a district court could draw an inference of reasonable reliance." See Allison, 447 F. App'x at 276 ("What is not pleaded in the complaint is any plausible reason why a party with this level of sophistication was reasonable in relying entirely on an oral representation about the level of capital commitment when . . . the truth or falsity of that representation was worth at least $1.75

million to him."). Thus, Brown failed to sufficiently state a claim for fraud necessary to trigger Recourse Event (e).

Because the Complaint failed to sufficiently plead the occurrence of a Recourse Event pursuant to the Note agreement, any damages Brown could recover for breach of contract due to defendant's default on the Note are limited to "funds, if any, collected by the Maker under the DOI Guaranty." (Compl't Ex. A at 4.) LBCDE has not and no longer can collect funds under the DOI Guaranty. Thus, Brown's ability to obtain relief under the Note is foreclosed and Brown's breach of contract and default on a promissory note claims are dismissed.

II.     Breach of the Covenant of Good Faith and Fair Dealing

"Under New York law, a covenant of good faith and fair dealing is implied in all contracts." 1-10 Indus. Assocs., LLC v. Trim Corp. of Am., 747 N.Y.S.2d 29 (2d Dep't 2002). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002) (citations and internal quotation marks omitted). "[T]he duties of good faith and fair dealing . . . encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included. Id. (citations and internal quotation marks omitted). Thus, "[w]here the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995). "No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship." Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304 (1983). Thus, the implied covenant "does not add[ ] to the contract a substantive

provision not included by the parties." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 199 (2d Cir. 2005) (citation and internal quotation marks omitted).

Brown argues that LBCDE breached the covenant of good faith and fair dealing when it sold the LBCWH Note along with the DOI guaranty, thereby limiting plaintiff's "remedy to a pool of non-existent funds." (Pl. Mem. at 17) (Compl't ¶¶ 75-79) Brown further alleges that he relied on the assertion that if the LBCWH Note was sold, Brown would be paid from the proceeds derived from the sale. (Compl't ¶ 80) Accordingly, Brown contends that LBCDE denied Brown the benefit of the bargain when LBCDE sold the DOI Guaranty and when, subsequently, LBCDE elected to pay other Class A Note holders, but not Brown, from the proceeds of the sale of the LBCWH Note. (Id. ¶¶ 81-83)

Although LBCDE's sale of the LBCWH note may have denied Brown the benefit of the bargain by depriving him of his primary remedy under the note, "[i]ntegral to a finding of a breach of the implied covenant is a party's action that directly violates an obligation that may be presumed to have been intended by the parties." M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990). Brown claims that LBCDE breached the covenant of good faith and fair dealing when it sold the LBCWH Note, however, prior to executing the Note, Brown knew that LBCDE intended to sell the LBCWH Note. (Compl't ¶ 31) In other words, LBCDE's decision to sell the LBCWH Note did not directly violate an obligation presumed to have been intended by the parties; rather, LBCDE's sale of the LBCWH Note was an action that was openly contemplated by the parties prior to the execution of the Note. (Id.) Moreover, the Note did not prohibit LBCDE's sale of the LBCWH Note and "the implied covenant does not extend so far as to undermine a party's 'general right to act on its own interests in a way that may incidentally lessen' the other party's anticipated fruits from the contract." M/A-COM, 904 F.2d at 136

(quoting Van Valkenburgh, Nooger, & Neville, Inc. v. Hayden Publ'g Co., 30 N.Y.2d 34, 46 (1972)).

Accordingly, plaintiff's breach of the covenant of good faith and fair dealing claim is dismissed.

III.     Securities Fraud Claim

Brown asserts a claim of securities fraud but the Complaint does not specify under which statute or governing body of law the plaintiff purports to bring this claim. (Compl't ¶¶ 14, 84-86) Presumably, and as defendants assume in their briefings, Brown's securities fraud claim would be founded under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b), and rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. To succeed on a claim that defendants committed securities fraud in violation of section 10(b) and rule 10b-5, Brown must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. 1309, 1317-18 (2011) (quoting Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008)). Moreover, to survive defendant's motion to dismiss, the Complaint must satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(b). Under the PSLRA, "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). "If an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Id. In pleading scienter, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with

particular facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. § 78u-4(b)(2).

The Complaint fails to sufficiently allege loss causation with respect to Clarkson's oral promise to Brown that he would be paid in full on the Note when LBCDE sold the LBCWH Note. "Loss causation . . . is the proximate causal link between the alleged misconduct and the plaintiff's economic harm." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 107 (2d Cir. 2007). "To that end, the plaintiff's complaint must plead that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." Id. Although the Complaint pleads that Clarkson's misrepresentation induced Brown to execute the Note, Brown does not allege that LBCDE's failure to pay him upon the sale of the LBCWH Note proximately or foreseeably caused LBCDE's *default* on the Note. LBCDE's failure to pay Brown from the sale proceeds of the LBCWH Note, the subject of Clarkson's alleged misrepresentation, did not breach the Note agreement, render the Note in default, and cause Brown's economic loss. Rather, LBCDE's failure to pay Brown annually pursuant to the terms of the Note caused Brown's loss.

The Court notes that plaintiff has not opposed defendants' motion to dismiss the securities fraud cause of action. Brown's securities fraud claim is dismissed.

## CONCLUSION

For the reasons outlined above, Defendants LBCDE and Gavin Clarkson's motion to dismiss the Second Amended Complaint is GRANTED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 30, 2014